|,SOL GOTHARD, Judge.
This is an appeal from a judgment of the Juvenile Court, Parish of Jefferson, granting an intra-family adoption. For reasons that follow, we affirm.
On July 9, 2002, J.C. Ill filed a petition for intra-family adoption of five-year-old C.S.K. In the petition it is alleged that J.C. Ill is the step-father of C.S.K., and is currently married to C.S.K.’s mother, A.C. On July 17, 2002, C.N., the alleged biological father, filed an Exception of Lis Pen-dens and Lack of Joinder, alleging that the adoption petition was filed in response to a petition C.N. filed in Orleans Parish Civil District Court, which requested a declaration of paternity and a plan for visitation.
The juvenile court denied the exceptions, and ordered that the matter would proceed pursuant to La.Ch.C. art. 1247(C), which provides that:
If the adoption petition names an alleged or adjudicated father and his parental rights have not been terminated by a court of competent jurisdiction, he shall be served with notice of the filing of the petition in accordance with Articles 1133, 1134, and 1136 and thereafter, his rights shall be determined in accordance with the provisions of Articles 1137 through 1143.
After a full hearing on the merits, the juvenile court terminated C.N/s parental rights. Subsequently, C.N. moved for, and was granted a new trial at which he presented new documentary evidence of support. After considering the new ^evidence, the juvenile court entered a new judgment terminating C.N.’s parental *683 rights. A second motion for new trial was denied by the court and C.N. brought this appeal.
The first issue for our consideration is an exception of no cause/no right of action filed in this court by C.N., which alleges that La.Ch.C. article 1243 does not allow the child’s mother as a party petitioner.[1] The persons who may petition for intra-family adoption enumerated in article 1243 do not include the parent of a child. However, the consent of a parent whose parental rights have not been terminated must be obtained in an intra-family adoption. A parent of an illegitimate child who is married to the petitioning spouse shall join in the petition. La.Ch.C. article 1244 C. The child’s mother herein is married to the petitioning spouse. Accordingly, we find no merit in C.N.’s exception of no cause/no right of action.
The facts alleged in the petition for in-tra-family adoption that are not disputed are that the child, C.S.K. was born out of wedlock on June 14, 1997 to A.C. and C.N. C.N., the natural father, is not named on the birth certificate and has never executed a legitimation by authentic act. Further, C.N. had not established his parental rights in accordance with the Louisiana Children’s Code or had his paternity determined by a judgment of filiation.
The petition further alleges that petitioners, J.C. Ill and A.C., were legally married on December 27, 2000, and that C.S.K. has lived with them continuously since that date.
It is apparent from the extensive and well-crafted reasons for judgment that accompany the judgment, that the juvenile court judge took many factors into consideration before making the decision to ter-mínate C.N.’s parental rights. The | /actual findings outlined in the reasons for judgment are supported by the record, and are summarized below.
The record shows that C.N. and A.C. lived together in 1996 and that A.C. became pregnant during the couple’s co-habitation. They lived together for part of the pregnancy. From September to December of 1996, the two shared living expenses. C.N. began paying all living expenses in January 1997, when A.C. began nursing school. Near the end of her term of pregnancy, A.C. left the residence she shared with C.N. and moved in with her mother. While the testimony of the parties vary as to the amount of support C.N. supplied during the later part of the pregnancy and birth, it is clear that C.N. made some contribution.
On June 14, 1997, C.S.K. was born. The costs of the birth were paid by Medicaid. A.C. and the baby returned to the home of A.C.’s mother after release from the hospital. A nursery was set up for the baby, to which C.N. contributed a changing table. C.N.’s name was not put on the birth certificate, and he testified that he did not seek legal advice, execute an Act of Acknowledgment, or register with the Punitive Father Registry. C.N. testified that he was seeing his daughter and he didn’t think the legalities mattered.
Shortly after C.S.K. was born, C.N. visited daily. However, after a few weeks the visits became more sporadic. Then in March, 1998, A.C. and the baby moved back into the apartment with C.N. and it is undisputed that C.N. paid for all household expenses. A.C. left C.S.K. in the care of her maternal grandmother and attended *684 nursing school during the day. There is a dispute over whether C.N. paid the grandmother for the babysitting services. C.N. alleges he did, but the grandmother denies any payment.
In June of 1998, the couple broke up again and A.C. left the apartment. On August 8, 1998, C.N. was arrested on drug charges and possession of an automatic handgun. At the hearing in juvenile court, C.N. admitted he was engaged in drug 1 strafficking, but denied any personal use of drugs. After C.N. posted bond and was released from prison, he lived with A.C. temporarily while he looked for his own apartment. There is some disagreement between the parties as to the amount of time actually spent in the apartment with A.C. and the baby. Throughout this period A.C. maintains that she received no financial help from C.N. for household expenses or child support. A.C. further testified that C.N. spent little time with the child and did not spend Christmas with C.S.K. or give her any gifts. A.C. stated that she was forced to apply for welfare to help cover the cost of C.S.K’s daycare.
In the summer of 1999, C.N. moved out of the apartment and A.C. and the child moved in with A.C.’s sister. At that time C.N. gave A.C. one child support payment of $600.00. The parties do not agree on the amount of time C.N. spent with C.S.K. during this period. They agree that he visited on Fathers’s Day, took the child to Chuck E Cheese once that month, and took C.S.K. once for an overnight visit. A.C. testified that, although C.N. was listed as a person to whom the daycare center could release the child, C.N. never took advantage of that privilege. However, C.N. testified that he often picked C.S.K. up from daycare and visited often.
In November 1999, C.N. was again arrested on drug charges in Texas. At some point in 1999, a friend of C.N.’s brought an envelope with about $1,000.00 in cash to A.C. at C.N.’s direction. On January 8, 2000, C.N. gave A.C. $500.00 in child support.
The last time C.N. visited with C.S.K. was during the Christmas season in 1999. C.N. pled guilty to possession with intent to distribute marijuana on January 25, 2000, and was sentenced to serve a 30-month term in Federal Court. On May 21, 2001, he pled guilty in St. Charles Parish for possession with intent to distribute marijuana, and was sentenced to serve a four-year sentence to be concurrent with the sentence imposed in Federal Court.
| ^Except for some testimony that C.N. called A.C. to request photographs of C.S.K., and a request that she visit him in prison on Father’s Day 2001, there is no evidence that he made any attempt to contact his daughter while in prison. Further, while C.N. admits earning $3,000.00 while in prison in connection with a stock trading deal, he did not send any payments of child support. C.N. was released from prison in April of 2002, and is expected to be employed as a stock broker.
In December of 2000, A.C. married J.C. III. The couple had a child in November, 2001. C.S.K. is living in this family and is bonded to her stepfather whom she calls “Daddy.” A.C. testified that J.C. Ill treats both children the same and that C.S.K. has no memory of C.N. She further testified that C.N. was released from prison in April of 2002 and called her once shortly afterward. In June of 2002 C.N. filed the action in district court, and J.C. Ill and A.C. filed this juvenile action.
Other evidence considered by the juvenile court is a confidential report submitted to the Court by the Office of Community of Services that shows C.S.K. to be a happy, well-adjusted five-year-old who un *685 derstands that J.C. Ill is not her biological father, but has no memory of C.N.
After this trial, the juvenile court rendered judgment on October 25, 2002, terminating C.N.’s parental rights.
As previously stated, C.N. moved for and was granted a new trial. His new trial motion asserted that he had additional receipts for child support payments and two additional witnesses who were previously unavailable. At the new trial hearing, however, C.N. did not produce any new witnesses. He did introduce various documentary evidence including cancelled checks and receipts for child support. The juvenile court again gave extensive written reasons for judgment that show findings of fact which are consistent with the evidence produced. The court found that C.N. showed an additional $1,500.00 to $2,000.00 paid in child support |7between late 1999 and early 2000. The court also accepted C.N.’s testimony that he contributed more child support than he could document during that time. However, the court noted that the financial support ended in 2000 when C.N. was in prison, even though he earned about $3,000.00 during his imprisonment.
The juvenile court also took into consideration the fact that C.N. did not send letters, cards or make phone calls to his daughter during his period of incarceration in making the decision again to terminate C.N.’s parental rights.
After that decision, a second motion for new trial filed by C.N. was denied and this appeal followed.
In brief to this court, C.N. assigns four errors. In the first, he asserts that the trial court erred in denying the Exception of Lis Pendens. C.N. argues that the petition to establish paternity and for visitation filed in Orleans Parish Civil District Court, which preceded the filing of the petition for intra-family adoption, had the same goal. Although C.N. admits he could find no law to support his exception, he proposes that La. C.C. article 1243, which names those who may petition for an intra-family adoption, was never intended as a defense to a petition for paternity.
The juvenile court denied the Exception of Lis Pendens stating, “court will proceed in accordance with Children’s Code art. 1247(C).” La.Ch.C. art. 1247(C) provides as follows:
If the adoption petition names an alleged or adjudicated father and his parental rights have not been terminated by a court of competent jurisdiction, he shall be served with notice of the filing of the petition in accordance with Articles 1133, 1134, and 1136 and thereafter, his rights shall be. determined in accordance with the provisions of Articles 1137 through 1143.
La.C.C.P. art. 531 provides:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When |Rthe defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
As recently stated by this court:
The test for whether an exception of lis pendens should be granted is to inquire whether a final judgment in the first suit would be res judicata in the subsequently filed suit. The exception of lis pen-dens has the same requirements as the exception of res judicata; it is properly granted when the suits involve the same transaction or occurrence between the same parties in the same capacities, (citations omitted)
*686 United General Title Ins. Co. v. Casey Title, Ltd., 01-600 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061,1065.
As C.N. acknowledges, the purpose of Kis petition was to establish paternity and to set visitation. However, paternity was not at issue herein. It was asserted in the petition for intra-family adoption that C.N. is the biological father. Thus, we find no error in the denial of the Exception of Lis Pendens. Further, we find that the juvenile court’s use of art. 1247(C) afforded to C.N. all the rights of a father in his opposition to the adoption.
In two of the assignments of error, C.N. questions the Children’s Code articles used by the juvenile court to terminate his parental rights. C.N. argues that the use of article 1138, which is contained in the section entitled “Surrender Procedure in General”, was incorrect and put the burden on him to prove his parental rights. C.N. argues that, since this is an intra-family adoption, article 1245, which places the burden on the petitioner, should have been used in the adjudication of this case. C.N. reasons that the provisions of article 1245 make the decision the parental consent is not necessary for the adoption discretionary, as opposed to the more stringent article 1138, which requires a mandatory termination of parental rights. Thus, C.N. argues the juvenile court erred in applying article 1138.
|aWe are not persuaded by C.N.’s argument. La.Ch.C. article 1245 provides in pertinent part that “(t)he consent of a parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B or C of this Article.” However, C.N. does not meet the criteria for a person “whose consent or relinquishment is required” under article 1193, which provides as follows:
Unless rights have been terminated in accordance with Title X, XI, or XVII, consent to the adoption of a child or relinquishment of parental rights shall be required of the following:
(1) The mother of the child.
(2) The father of the child, regardless of the child’s actual paternity, if any of the following apply:
(a) The child is legitimate in accordance with Article 179 or Article 198 of the Louisiana Civil Code or their legal equivalents in another state.
(b) The father has executed a legitimation by authentic act as authorized by Article 200 of the Louisiana Civil Code or its legal equivalent in another state and has further recorded the act of legitimation in the parish of the child’s birth or on the child’s birth certificate.
(c) The father is presumed to be the father of the child in accordance with Articles 184 through 186 of the Louisiana Civil Code or their legal equivalents in another state.
(3) The alleged father of the child who has established his parental rights in accordance with Chapter 10 of Title XI.
(4) The biological father of the child whose paternity has been determined by a judgment of filiation in accordance with Civil Code Article 209 and who has established his parental rights in accordance with Chapter 10 of Title XI.
(5) The custodial agency which has placed the child for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interest of the child and there is a finding that the agency has unreasonably withheld its consent.
Therefore, we find the trial court correctly used article 1138 as provided for in article 1247 C which requires notice to C.N. and provides that “the rights shall be deter *687 mined in accordance with the provisions of Articles 1137 through 1143.”
hnArticle 1138 provides for an adversarial hearing in the opposition to the adoption and a determination of the establishment of parental rights. That article provides as follows:
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father’s substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother’s pregnancy or the child’s birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
(2) Was willing to .provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C. The child, the mother of the child, and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article. However, the primary consideration shall be, and the court shall accept evidence concerning, the best interests of the child.
D.If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
’ E. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent. The court may also order the alleged or adjudicated father to reimburse the department, or the licensed private adoption agency, or other agency, or whoever has assumed liability for such costs, all or part of the medical expenses incurred for the mother and the child in connection with the birth of the child.
Having found that the juvenile court applied the correct provisions of the Children’s Code, we now review the decision to terminate C.N.’s parental rights by InQur standard of review. This court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or clear error. Further, when the conflicting evidence is presented to the trial court, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. In re the Adoption of A.P.C., 00-1381 (La.App. 5 Cir. 12/13/00), 776 So.2d 567, 573; mi denied, 01-0319 (La.2/14/01), 785 So.2d 835.
Given the extensive reasons for judgment, based on findings of fact supported by the record, we can find neither manifest error nor clear error. The juvenile court considered that C.N. did not send cards, letters or other correspondence to C.S.K. during his imprisonment. Further, although C.N. earned $3,000.00 during that time, he sent no child support.
The legal analysis used by the juvenile court in making this decision is correctly *688 set forth in the reasons for judgment. Because we cannot improve on this analysis, we again incorporate and adopt the legal analysis used by the juvenile court in this opinion as follows:
Children’s Code article 1193 identifies the persons whose consent to adoption is necessary. Consent is required of the father who:
a) is considered by law to be a “legal” father under paragraph (2);
b) is an alleged or adjudicated father who has established is parental rights in accordance with Chapter 10 of Title XI.
As C.N. is not considered a “legal father” under paragraph (2) of this article, he falls into the second category. Thus, before his consent to adoption is deemed to be required, he must first establish his parental rights in accordance with Chapter 10 of Title XI of the Children’s Code. This chapter provides that to establish his parental rights, the alleged father must demonstrate to the court his affirmative efforts to establish or maintain a parental relationship with the child. The court is mandated to consider the father’s fitness and his commitment to parental responsibilities.
Children’s Code article 1138, sets forth a three-part test for the establishment of parental rights by the opposing father. This article provides in part:
hiN. At the opposition hearing, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father’s substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother’s pregnancy or the child’s birth, that he either:
1) Provided financial support, including during pregnancy, contributions to the payment of the medical expenses of pregnancy or birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
2) Was willing to provide such support and to visit, and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
Louisiana Children’s Code article 1138(A) and (B) (West, 2002.) (emphasis added.)
“Fit parent” is defined by art. 1103(5), which states:
“Parental fitness” means:
(a) That a parent has not abused the child. For purposes of this Subparagraph, abuse means the infliction of physical or mental injury which causes deterioration to the child, sexual abuse, exploitation, or overworking of a child to such an extent that his health or moral or emotional well-being is endangered.
(b) That a parent has consistently offered to provide reasonably necessary food, clothing, appropriate shelter, or treatment for the child. For purposes of this Subparagraph, treatment means medical care or other health services provided in accordance with the tenets of a *689 well-recognized religious method of healing with a reasonable, proven record of success.
(c) That a parent suffers from no medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance | iaabuse, or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
(d) Viewed in its entirety, the parent’s past or present conduct, including his criminal convictions, would not pose a risk of substantial harm to the physical, mental, or emotional health of the child.
Louisiana Children’s Code article 1103(5) (West, 2002.) (emphasis added.)
The alleged father bears the burden of proof under article 1138. Article 1138(C) allows the child and the legal custodian to offer rebuttal evidence of the issues enumerated in paragraphs (A) and (B) of this article. Further, section (C) specifies that the primary consideration shall be the best interests of the child.
In applying the above law to the facts herein, the juvenile court found that paternity was established. However, the court also found that C.N. did not prove that he had “manifested a substantial commitment to his parental responsibilities” or that he is a “fit parent.” The juvenile court noted that his inconsistent visits and sporadic financial support did not show a substantial commitment to his parental responsibilities. The court further noted that C.N. took no legal action to establish paternity until the child was five years old and living in a stable home with her mother and stepfather.
Regarding his failure to prove his fitness as a parent, the court again reiterated the definition of fitness in La.Ch.C. article 1103(5), and found that his “meager amounts of child support” are a “pittance in comparison to the needs of a young child”. Further, the court recognized that C.N. admitted his mistakes concerning the lifestyle choices he has made and appeared sincere in his intent to “turn over a new leaf’. However, the court concluded that his past conduct of criminal activity and drug dealing does not quality him as a fit parent. As the hJuvenile court noted, “Fortunately for C.S.K., her mother marries a man who stepped into the role of father, and' has evidently performed the duties of that role extremely well. Otherwise, the child would have essentially been without any father from the age of 2]é years to almost five years old. Even setting aside any other implications of C.N.’s criminal lifestyle, the impact of this lengthy absence on his daughter’s emotional health cannot be understated.”
Because we find the finding of facts are supported by the record, the legal analysis is correct and the facts are correctly applied to the law, we affirm the juvenile court’s termination of parental rights.

AFFIRMED.

. La.C.C.P. article 2164 allows the peremptory exception of no cause of action to be filed for the first time in the appellate court if filed before the case is submitted for a decision. Therefore, the exception was accepted by this court and referred to the merits of the appeal for consideration.