I .GUIDRY, J.
A biological mother appeals a judgment terminating her parental rights to her minor child and granting the spouse of the child’s biological father permission to adopt the child. Based on our review of the law and evidence, we affirm.
FACTS AND PROCEDURAL HISTORY
D.D.M. gave birth to T.A.S. on August 26, 1997. Initially, it was assumed that J.M., whose name was originally listed on T.A.S.’s birth certificate and who executed an affidavit of avowal, was the biological father of T.A.S., but it was later discovered that J.F.S. was the biological father. J.F.S. was incarcerated at the time of the discovery.[1] Soon after J.F.S. learned that he was T.A.S.’s father, D.D.M. and T.A.S. moved in with J.F.S.’s mother, V.S., in whose care D.D.M. subsequently left T.A.S. after having granted V.S. a provisional mandate of custody.
In June 1999, J.F.S. was granted an early release from prison for good behavior and for obtaining a General Equivalency Diploma (G.E.D.). Immediately upon being released, J.F.S. assumed physical custody and guardianship of T.A.S. and executed an affidavit of paternity. In April 2001, J.F.S. was awarded sole custody of T.A.S. pursuant to a consent decree for child custody and support. D.D.M. was ordered to pay the sum of $253.33 a month in child support and granted supervised visitation with T.A.S. every other Saturday.
In October 2002, J.F.S. married L.S., whom he had begun dating shortly after his release from prison, and on May 12, 2003, J.F.S. and L.S. filed a petition for intrafamily adoption in accordance with Title 12 of the | ^Louisiana Children’s Code. D.D.M. excepted to the petition, raising the objection of failure to join an indispensable party based on the failure to join J.M. in the suit. The trial court denied the exception, and D.D.M. filed an answer opposing the petition for intrafamily adoption. The matter proceeded to trial, and after taking the matter under advisement, the trial court determined that the provisions of La. Ch.C. art. 1245 had been met so that D.D.M.’s consent to the adoption was not necessary. The trial court additionally found that it was in the best interest of the child to terminate D.D.M.’s parental rights and grant the petition for adoption. It is from this adverse judgment that D.D.M. appeals.
ASSIGNMENTS OF ERROR
D.D.M. contests the trial court’s ruling in this matter in the following respects:
I. The trial court was clearly wrong or manifestly erroneous when it found that the legal father, [J.M.], was not an indispensable party to the intra-family adoption proceeding.
II. The trial court was clearly wrong or manifestly erroneous when it found that the natural mother was without just cause for failing to make her child support obligation for six consecutive months.
III. The trial court was clearly wrong or manifestly erroneous when it found that an involuntary intra-family adoption was in the child’s best interest in this case.
IV. The trial court was clearly wrong or manifestly erroneous when it *139 failed to grant the appellant a sus-pensive appeal.
DISCUSSION

Failure to join an indispensable party

In her first assignment of error, D.D.M. asserts that the trial court erred in finding that J.M. was not an indispensable party to these proceedings. J.F.S. and L.S. contend, on the other hand, that D.D.M. is not |4entitled to seek review of the trial court’s interlocutory judgment overruling the exception based on her failure to timely appeal the judgment overruling the exception.
After judgment on the merits, an interlocutory judgment becomes a part of the final decree and subject to review on appeal. Schnatz v. Schnatz, 501 So.2d 318, 319 (La.App. 5th Cir.), writ denied, 504 So.2d 877 (La.1987). When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment appealed. Landry v. Leonard J. Chabert Medical Center, 02-1559, p. 5 n. 4 (La.App. 1st Cir.5/14/03), 858 So.2d 454, 461 n. 4, writs denied, 03-1748, 03-1752 (La.10/17/03), 855 So.2d 761. Thus, D.D.M.’s assignment of error regarding the trial court’s overruling of the exception is properly before us, although we find the assignment to be meritless.
D.D.M., who was unmarried at the time she was pregnant with T.A.S., assumed that J.M. was the father of the child. However, it is undisputed that J.F.S. is the biological father of T.A.S., as conclusively revealed by a paternity test that J.F.S. requested in 1999. As noted by Louisiana Supreme Court in Succession of Robinson, 94-2229, p. 4 (La.5/22/95), 654 So.2d 682, 684, “[ajbsent a biological relationship, the avowal is null. ‘A fact cannot be avowed when it has never existed.’ If the acknowledgment is null, it produces no effects.” (Citations omitted). Accordingly, J.M., who was never married to D.D.M., is not the legal father of T.A.S., and therefore, is not an indispensable party to these proceedings. Hence, we reject this assignment of error.
| ¿Consent and Just Cause
In her next assignment of error, D.D.M. disputes the trial court’s finding that she did not prove just cause for failing to fulfill her court-ordered child support obligation for a period of six months. Normally, the biological parents of a child must consent to an adoption, see La. Ch.C. art. 1193; however, La. Ch.C. art. 1245 provides, in pertinent part:
A. The consent of the parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B or C of this Article.
[[Image here]]
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
Although J.F.S. and L.S. urged and introduced evidence to support finding that both conditions of La. Ch.C. art. 1245(C) had been met, the trial court, in its reasons *140 for judgment, specifically found that the grounds listed under La. Ch.C. art. 1245(C)(1) were met. The evidence in the record clearly supports and D.D.M. does not dispute that she failed to comply with the April 12, 2001 child support order for a period of at least six months; rather, D.D.M. questions the trial court’s finding that just cause did not exist for her failure to comply.
Initially, we observe that D.D.M. errs in her assertion that J.F.S. and L.S. bore the burden of proving by clear and convincing evidence that she did not have just cause for her failure to comply with the child support order. | fiAlthough the initial burden of proving a parent’s consent is not required is on the party seeking the adoption, once a prima facie case of nonsupport is proven, the burden shifts to the nonconsenting parent to show that his or her failure was due to factors beyond his or her control. See In re J.A.B., 04-1160, p. 2 (La.App. 1st Cir.9/17/04), 884 So.2d 678, 679; In re Billeaud, 600 So.2d 863, 866 (La.App. 3rd Cir.1992).
The only justification given by D.D.M. for her failure to pay the courtordered child support is her assertion that the consent decree did not clearly indicate when support payments were due to commence and that her emotional instability, stemming from her mother’s suicide in 1998, kept her from fulfilling her obligation to pay child support. A copy of the consent decree was not introduced into evidence, so we are unable to review that document to determine whether there truly exists any ambiguity regarding the terms of the judgment. We also note, that although D.D.M. argues in brief that she was unmarried and still struggling with depression over her mother’s death at the time the consent decree was rendered, the record reveals that approximately two months later, D.D.M. married R.M. and took on the responsibility of caring for R.M.’s four children from a previous marriage as their stepmother. These actions by D.D.M. significantly nullify D.D.M.’s espoused justifications for failure to pay the court-ordered support and give credence to the trial court’s finding that the payment of approximately $2,000.00 in past due support after having allowed over a year lapse without having made any payment was “too little too late.” We reject this assignment of error.

Best Interest Analysis

 Even where the other parent’s consent is obviated by failure to support his or her child, the court must consider the best interest of the child in 17determining whether the adoption should proceed. In re Miller, 95-1051, p. 6 (La.App. 1st Cir.12/15/95), 665 So.2d 774, 777, writ denied, 96-0166 (La.2/9/96), 667 So.2d 541. The primary consideration in adoption proceedings is whether the adoption is in the best interests of the child. In re Miller, 95-1051 at 6, 665 So.2d at 777. In cases where the stepparent seeking adoption is married to the parent who has been granted sole custody of the child, there is a rebuttable presumption that the adoption is in the best interest of the child. La. Ch.C. art. 1255(B). Nevertheless, this court has looked at the following factors in reviewing a trial court’s determination whether the granting or denying of the petition for adoption would be in the best interest of the child:
The most important factors are the child’s relationships with her stepfather and her natural father. It is not enough to examine the love and home environment provided by the petitioner/stepparent. The court must also examine the depth of closeness of the child’s ties with the non-custodial natural parent, and the effect which the loss of this relationship would have on the child. Further, the *141 court must consider the-seriousness and finality of the severing of the relationship between the parent and child, as well as the importance and benefit to the child of a continued relationship with the parent.
In re J.A.B., 04-1160 at 4, 884 So.2d at 680.
In concluding that it would be in the best interest of T.A.S. to terminate D.D.M.’s parental rights and to grant the petition for adoption filed by J.F.S. and L.S., the trial court held that D.D.M. “has simply provided too little interest too late in the life of this child. Further, the court is concerned that [D.D.M.]’s pattern of exercising sporadic visitation is not in his best interest.” The trial court also pointed out “several incidents of domestic conflict” as a basis for concern in its reasons for judgment.
Considering the totality of the testimony and the other evidence presented, we cannot say that the trial court abused its discretion in |Rdetermining that it was in the child’s best interest to sever D.D.M.’s parental ties and allow the adoption of T.A.S. by L.S. The evidence conclusively shows that over the last four years of T.A.S.’s life, L.S. was substantially involved in his care and upbringing and established a close relationship with him; whereas, D.D.M. admitted she only saw T.A.S. approximately fifteen times in the three years prior to the hearing. Although D.D.M. alleged that she was hindered in pursuing her rights to visitation and telephone communication with T.A.S. by V.S., J.F.S. and her own emotional instability generated by feelings of guilt and depression relative to her mother’s suicide, it is troubling, to say the least, to learn that D.D.M. took no steps to legally enforce or increase her rights to visitation and that her emotional instability did not hinder her from getting married and be-coining a purportedly exemplary - stepmother.
Further, the testimony by J.F.S., L.S., and V.S. that T.A.S. expressed growing reluctance and anxiety with respect to visitation and contact with D.D.M. in the two years leading up to the hearing, which testimony was largely corroborated by D.D.M. and R.M., supports a finding that the relationship- between T.A.S. and D.D.M. lacks any quality or depth. Finally, although an attempt was made to moderate and tone down the allegations of physical abuse enumerated in the various protective orders filed by D.D.M. and R.M. in the course of their marriáge, which was three years at the time' of the hearing, neither spouse denied that acts of physical abuse had occurred, even though the acts of abuse were allegedly exaggerated in the petitions for the issuance of protective orders. Thus, based on the record before us, we cannot say that the trial court abused the great discretion afforded it in granting the petition for adoption. In so finding, we pretermit discussion’ of D.D.M.’s final assignment of error.
I ^CONCLUSION
Based on the evidence and the applicable law in this matter, we affirm the trial court’s judgment terminating the parental rights of D.D.M. and granting L.S. the authority to* adopt T.A.S. All costs of this appeal are cást to the appellant, D.D.M.
AFFIRMED.

. According to evidence in the record, in January 1997, J.F.S. was charged with possession of marijuana, drug paraphernalia and use of an illegal weapon.