EDWARD A. DUFRESNE, JR., Chief Judge.
|2This is an appeal from a judgment of the Jefferson Parish Juvenile Court granting a petition for intrafamily adoption. For the reasons stated herein, we affirm the judgment of adoption.
FACTS AND PROCEDURAL HISTORY[1]
On September 8, 2006, the minor child, C.E.M., III was born to D.V. (now D.S. and hereinafter referred to as D.S.) and C.E.M., Jr. in Metairie, Louisiana. D.S. and C.E.M., Jr. lived together during D.S.’s pregnancy; however, the two were never married. In early December of 2006, approximately three months after the child’s birth, D.S. and C.E.M., Jr. separated at which time C.E.M., Jr. moved to Dallas, Texas, where his parents resided. Although the parties were not married, C.E.M., Jr. was listed on the birth certificate as the child’s father; and there is apparently no dispute that C.E.M., Jr. is the child’s biological father.
*1140 In January of 2007, D.S. began dating K.S., and the two were married on July 8, 2008. Thereafter, in March of 2009, K.S., along with D.S., filed a Petition for Intra-family Adoption seeking to have the minor child adopted by his stepfather, K.S. Pursuant to LSA-Ch.C. art. 1245, the adoption petition alleged that RC.E.M., Jr. “has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.” On April 17, 2009, Michael Davis, counsel for C.E.M., Jr. filed an Opposition to Petition for Intrafamily Adoption. The hearing was scheduled for May 6, 2009; however, the opposition to the adoption was dismissed by the court when C.E.M., Jr. and his attorney showed up several hours late. On May 11, 2009, Mr. Davis filed a Motion for New Trial, and the hearing on the opposition to the adoption of C.E.M., III was reset and held on May 18, 2009.
At the opposition hearing, the basic facts regarding the biological father’s contact with and support of his son were undisputed. According to copies of money orders entered into evidence by C.E.M., Jr., in 2007, he sent eight payments of $200 to D.S. for the care of C.E.M., III. The first support payment was sent in February, and the eighth payment was sent in October of 2007. In addition to these payments, C.E.M., Jr. testified that he maintained medical, dental, and vision insurance for his son.
With regard to visitation, C.E.M., Jr. had two visits with his son in the fall of 2007. On his first visit with C.E.M., III, nearly one year after the child’s birth, D.S. and C.E.M., Jr. met at a store in New Orleans, and C.E.M., Jr. took his son to Baton Rouge for the day. D.S. testified that C.E.M., Jr. picked their son up at about 5:00 p.m. and returned him at about 11:00 p.m.[2] C.E.M., Jr. had asked if C.E.M., III could spend the night with him, but D.S. testified that she and her husband had to go to work the following morning and plans had already been made to transport the child to the babysitter’s and to school. C.E.M., Jr.’s next visit with his son occurred shortly thereafter. In December of 2007, D.S. took a trip to Dallas |4and brought C.E.M., III with her. On this occasion, C.E.M., Jr. had the opportunity to visit with his son for a couple of hours.
On March 27, 2008, C.E.M., Jr. filed a petition requesting a DNA test and further requesting that custody and visitation be determined. A hearing on that matter was set for May 13, 2008, but was continued until June 24, 2008. On June 4, 2008, D.S. filed a reconventional demand for child support. On June 9, 2008, the father’s attorney, Mr. Davis, sent the mother’s attorney, Ms. Taylor, a letter explaining that C.E.M., Jr. wished to seek a paternity test. Enclosed with this letter was a child support payment for C.E.M., III in the amount of $300. Both D.S. and C.E.M., Jr. agreed that this $300 was the last support check D.S. received from C.E.M., Jr. for the support of their son.
On June 24, 2008, D.S. and C.E.M., Jr. appeared before the 24th Judicial District Court on the matter of the DNA testing. At this time, D.S. offered to enter into a consent agreement regarding support and visitation; however, C.E.M., Jr. declined to enter into such an agreement until the results of the DNA test were known. Later that evening, C.E.M., Jr. had his third visit with his son at a McDonald’s. He apparently arrived late for this visit which lasted only about an hour. After the DNA test results confirmed that C.E.M., Jr. was the child’s biological father, Mr. Davis, on *1141 July 9, 2008, sent the mother’s attorney a letter asking that visitation be set. On August 6, 2008, Mr. Davis wrote D.S.’s attorney another letter requesting visitation for his client the weekend of August 15th. On August 11, 2008, Ms. Taylor responded that D.S. had not heard from C.E.M., Jr. and that C.E.M., Jr. should call D.S. to arrange specific times for visitation prior to his arrival. Later that month, C.E.M., Jr. had his fourth and final visit with C.E.M., III at a mall. This visit lasted between four and five hours.
|BAt the opposition hearing, C.E.M., Jr. provided his cellular phone records to show that he attempted to contact his son on his birthday on September 8, 2008. In his testimony, C.E.M., Jr. indicated that he attempted to visit his son on his birthday; however, it did not work out because D.S. was apparently returning to New Orleans after she had evacuated to Monroe due to a hurricane. C.E.M., Jr. also attempted to visit his son in October of 2008. He testified that he sent D.S. a text message advising her that he was in town and would like to visit his son. C.E.M., Jr. did not give her any advance notice that he would be in town. When D.S. received the text, she advised C.E.M., Jr. that the child already had plans to spend the day with her mother and sister who were in town visiting. She apparently offered C.E.M., Jr. the chance to see the child the following day; however, he was unable to change his return flight reservation to Dallas. In addition to the evidence regarding C.E.M., Jr.’s actual visits with the child, there was also evidence presented that C.E.M., Jr. was in Louisiana on numerous occasions and failed to contact or visit his son.
At the conclusion of the hearing, the juvenile court judge gave the parties an opportunity to file memorandum. Thereafter, on May 28, 2009, the juvenile court judge issued a judgment finding that pursuant to LSA-Ch.C.art. 1138, C.E.M., Jr. had failed to establish his parental rights to C.E.M., III; and therefore, his consent to the adoption of C.E.M., III by the stepfather was unnecessary. Accordingly, the judge denied the opposition to the adoption of C.E.M., III and set the matter for the final decree on the adoption. On June 15, 2009, the judge granted the adoption petition. C.E.M., Jr. now appeals from this judgment.
ISSUES PRESENTED
On appeal, C.E.M., Jr. argues that the juvenile court judge erred in denying his opposition and in granting the adoption. He specifically contends that the trial jyudge applied the wrong law in denying the opposition and further that petitioners did not meet their burden of proof on the petition for intrafamily adoption.
LAW AND ANALYSIS
With regard to the wrong application of the law, C.E.M., Jr. asserts that the trial judge’s use of LSA-Ch.C.art. 1138 dealing with surrender of parental rights was incorrect and put the burden on him to prove his parental rights. C.E.M., Jr. argues that, since this is an intrafamily adoption, LSA-Ch.C. art. 1245, which places the burden on petitioner, should have been used in the adjudication of this case. C.E.M., Jr. asserts that since his name is on the birth certificate as the father, his right to consent or not consent is established by LSA-Ch.C.art. 1245 C(2). We agree with this particular portion of C.E.M., Jr.’s argument.
A similar argument was raised by the child’s biological father in the case of In re J.R.C., 03-0761 (La.App. 5 Cir. 11/12/03), 861 So.2d 681. This court was not persuaded by the biological father’s argument. This court determined that the trial court correctly applied the provisions of LSA- *1142 Ch.C. art. 1138 as provided for in LSA-Ch.C.art. 1247 C because the biological father did not meet the criteria for a person whose consent or relinquishment is required under LSA-Ch.C. art. 1193. However, that case is distinguishable from the one presently before this court. In the case of In re J.R.C., the biological father was not named on the birth certificate and further, he had not established his parental rights in accordance with the Louisiana Children’s Code or had his paternity determined by a judgment of filiation.
In the present case, C.E.M., Jr. is named as the child’s father on the birth certificate. There was never any dispute between the parties that C.E.M., Jr. is the child’s father, and a subsequent DNA test confirmed that fact. Pursuant to LSA-Ch.C. art. 1243 C(2), dealing with intra-family adoptions, a “parent recognized as |7having parental rights includes not only an individual enumerated in Article 1193, but also .... a father whose name or signature appears on the child’s birth certificate as the child’s father.” Therefore, the child’s father clearly had parental rights and should not have been forced to establish those parental rights. Thus, the trial judge erred in applying the provisions of LSA-Ch.C. art. 1138 and in placing the burden of proof on the child’s father to establish his parental rights.
When a legal error occurs and a trial court applies incorrect principles of law, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Johnson v. Spurlock, 07-949 (La.App. 5 Cir. 5/27/08), 986 So.2d 724, 727-728, writ denied, 2008-1400 (La.7/25/08), 986 So.2d 670. Accordingly, we will now conduct a de novo review applying the correct principles of law.
As a general rule, the consent of the biological father is required for an intrafamily adoption by the stepfather. LSA-Ch.C. art. 1193; In re V.A.H., 07-472 (La.App. 5 Cir. 12/27/07), 972 So.2d 479, 483. However, under certain circumstances such consent may not be required. LSA-Ch.C. art. 1245 provides, in pertinent part, as follows:
The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article.
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
| ^Pursuant to LSA-Ch.C. art. 1245, the party petitioning the court for adoption carries the burden of proving a parent’s consent is not required under the law. In re V.A.H., 972 So.2d at 483. Based on our de novo review of the record, we find that the petitioners met their burden of proving that the biological father’s consent to the adoption was unnecessary based on his failure to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
The evidence introduced at the hearing regarding C.E.M., Jr.’s contact with the child is undisputed. From the time of the child’s birth, C.E.M., Jr. has visited the *1143 child on four, or possibly five, occasions. At the hearing, there was an indication that C.E.M., Jr. visited his son in January of 2007; however, no details regarding this visit were developed, and the juvenile court judge does not reference it in her reasons for judgment. After this possible visit, C.E.M., Jr.’s first visit with his son was in October of 2007, at which time he took his son to Baton Rouge for several hours. The second visit occurred in the December of 2007 when D.S. took C.E.M., III to Dallas. The third visit, which lasted about an hour, took place on June 24, 2008, when C.E.M., Jr. was in town for a hearing in the 24th Judicial District Court. His fourth and final visit took place with C.E.M., III in August of 2008. He visited with the child at a mall, and the visit lasted about four and a half hours. He also attempted to make contact and set up a visit with the child on his birthday on September 8, 2008; however, D.S. was unable to accommodate him as she was in the process of returning to New Orleans following evacuation for a hurricane. C.E.M., Jr. also sent a text message to D.S. in October of 2008 trying to arrange a visit. D.S. advised him that the child already had plans with her mother and sister who were in town visiting; however, she offered to set up a visit for the following day. C.E.M., Jr., was unable to change his plane reservation, and the | gvisit never occurred. Also, pursuant to questions asked by D.S.’s attorney, C.E.M., Jr. admitted that he was in Louisiana on multiple occasions but did not attempt to contact or visit his son.
The record clearly shows that C.E.M., Jr. did not see his son from January 2007 to October 2007, a period in excess of six months. Also, he did not see his son from December 2007 until June 24, 2008, a period of six months. Finally, his last visit with his son was in August of 2008, with the last attempted contact being in October 2008. Therefore, there were three time periods where C.E.M., Jr. failed to visit, communicate or attempt to communicate with his son for six months. Accordingly, based on our review of the proceedings, we find that petitioners met their burden of proving C.E.M., Jr.’s consent to the adoption was unnecessary based on his failure to visit, communicate, or attempt to communicate with his child without just cause for a period of six months.
C.E.M., Jr. argues that his filing of the petition in the 24th Judicial District Court to determine paternity, custody, and visitation interrupts the six month prescriptive period. A similar argument was rejected by this court in In re Intra Family Adoption of A.G.T., 06-805 (La.App. 5 Cir. 3/18/07), 956 So.2d 641, writ denied, 2007-0783 (La.5/4/07), 956 So.2d 611. This court agreed with the trial court’s determination that the biological father’s filing of a rule for visitation in the district court did not interrupt the six month time period set forth in LSA-Ch.C. art. 1245. This court noted that the biological father had resources and opportunity to discover that his daughter and her mother had returned to and were living in their home in Metair-ie. Thus, he could have both paid child support and contacted or visited with his daughter, but he did not do so; and he did not establish just cause for his failures. Likewise, in the present case, the mere filing of the petition does |,0not interrupt the six month time period where C.E.M., Jr. could have contacted or visited with his child but failed to do so without just case.
Lastly, we must address the best interests of the child. Even upon a finding that a parent has lost his right to consent to the adoption, the adoption should only be granted when it is also found to be in the best interests of the child. In re V.A.H., 972 So.2d at 484. The court is to *1144 hear and take into consideration information from all sources concerning the intra-family adoption, and the basic consideration shall be the best interests of the child. LSA-Ch.C. art. 1255 A; In re B.E.S., 08-777 (La.App. 5 Cir. 5/6/09), 15 So.3d 133, 136.
Based on our review, we find that the adoption is in the best interests of the child. We agree with the following reasons expressed by the juvenile court judge:
C.E.M. Jr. testified that he believes that all children should know them fathers and admitted that he has made some mistakes. However, D.S. testified that C.E.M. Jr. has no relationship with C.E.M. Ill and that C.E.M. Jr. is a “stranger” to their son. She also testified that C.E.M. Ill’s stepfather, K.S., is very involved in C.E.M. Ill’s life. D.S. stated that K.S. is the only father C.E.M. Ill knows and that K.S. has been there for all hospital visits, special occasions, and daily activities. D.S. stressed strongly that she believes that consistency is important in a child’s life and that C.E.M. Jr. has been nothing but inconsistent in his efforts to establish a relationship with their son. This Court agrees. C.E.M. Jr. has had endless opportunities to establish and maintain a relationship with his son and has failed to do so. D.S. has done nothing to thwart their relationship. She has made C.E.M. Ill available for visitation, has offered C.E.M. Jr. visitation two weekends a month, and even testified that she would prefer for this to be an “open adoption” as she wants her biological son to know his biological father. It is in this child’s best interest that he is raised in a stable environment and that he has a father who places C.E.M. Ill’s needs before his own.
In addition, we have taken into account the testimony of K.S. at the adoption hearing that he has a strong bond with C.E.M., Ill, and that they love each other and get along very well. He testified that he has cared for C.E.M., Ill on a daily basis since his marriage to D.S., that he would be a consistent father figure to the child, and that he refers to C.E.M., Ill as his son. He expressed his desire to adopt C.E.M., Ill as well as his willingness to accept all legal obligations of a parent to a l^child. Also, at the adoption hearing, D.S. testified as to the wonderful relationship between K.S. and C.E.M., III. She also testified that K.S. has been connected to her son since he was about three months old, that C.E.M. Ill calls K.S. “dad,” and that C.E.M., Ill has never known anyone else as “dad.”
For the reasons set forth herein, we find that pursuant to LSA-Ch.C. art. 1245, petitioners proved that C.E.M., Jr.’s consent to the adoption of C.E.M., Ill was unnecessary based on his failure to visit, communicate, or attempt to communicate with his son for a period of at least six months. Accordingly, we affirm the judgment of the Jefferson Parish Juvenile Court granting the adoption of C.E.M. Ill by his stepfather.

AFFIRMED.

. The facts and procedural history set forth herein are largely taken from the reasons for judgment issued by the juvenile court judge.

. It appears from the testimony that this visit occurred in October of 2007.