GUIDRY, J.
C.D.J., the biological mother of the minor children, appeals from a judgment of the district court terminating her parental rights and granting the stepmother's petition for intrafamily adoption of the minor children. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
D.G.C. and C.D.J. were never married; however, they lived together for approximately 14 years and had three children, W.K.C., K.P.C., and A.J.C. Following their separation, D.G.C. and C.D.J. were awarded joint custody of the minor children pursuant to an April 2014 judgment, with D.G.C. designated as the domiciliary parent. According to the judgment, C.D.J.'s custodial periods with the children were to be every other weekend and every Wednesday evening through Thursday morning. The last time C.D.J. exercised her custodial periods with the children was August 2014.
Thereafter, on November 14, 2015, D.G.C. married C.L.A.C. Following the filing by C.D.J. of a motion to enforce custody judgment on March 16, 2017, C.L.A.C., joined by D.G.C., filed a petition for intrafamily adoption on April 24, 2017. C.L.A.C. asserted that the consent of C.D.J. is not required pursuant to La. Ch. C. art. 1245(C)(2) because C.D.J. has refused and/or failed to visit, communicate, or attempt to communicate with the minor children without just cause for a period of at least six continuous months since the custody judgment was rendered in April 2014. C.L.A.C. further asserted that it was in the best interest of the children that they be adopted by her.
C.D.J. answered the petition on May 8, 2017, generally denying the allegations in the petition and stating that she opposed *305 the adoption of her children. C.D.J. also asserted that she has attempted to contact the children, and that adoption of the children by C.L.A.C. is not in their best interest. An attorney who was appointed by the district court to represent the interests of the minor children also filed a statement into the record.
The matter proceeded to trial on September 12, 2017, wherein the parties presented testimony and introduced evidence. At the conclusion of trial, the district court stated that he "[did] not find [C.D.J.'s] failure to visit with the children was with [just] cause for a period exceeding six months." The district court found that C.D.J. had opportunities to visit the children but for whatever reason chose not to exercise those opportunities. Accordingly, the district court found that C.D.J.'s consent was not required and that it was in the best interest of the children that her parental rights be terminated. The district court further found, based upon the factors in La. C.C. art. 134 and considering the evidence and testimony submitted, that it is in best interest of the children that the petition for intrafamily adoption be approved.
The district court signed a final decree in conformity with its oral ruling on September 12, 2017. C.D.J. now appeals from the district court's judgment, asserting that: (1) the district court did not have jurisdiction over this matter; (2) the district court incorrectly applied La. Ch. C. art. 1245(C)(2) ; (3) the district court erred in finding that her consent to the intrafamily adoption was not needed; and (4) the district court erred in finding that the adoption was in the best interest of the children.
DISCUSSION
Jurisdiction
Louisiana Revised Statutes 13:621.21 abolished Division G and Division H of the Twenty-First Judicial District Court effective midnight, December 31, 2014, and provided for the creation of two new judgeships in their place, Division J and Division K, respectively, effective January 1, 2015. La. R.S. 13:621.21(B)-(C). The subject matter jurisdiction of Division J and Division K is limited to family and juvenile matters, which include adoptions arising under the Louisiana Civil Code and the Louisiana Children's Code. La. R.S. 13:621.21(B)(2) and (C)(2).
In the instant case, the petition for intrafamily adoption was randomly allotted to Division K, and according to La. R.S. 13:621.21(C)(2), Division K had subject matter jurisdiction to hear this matter. However, C.D.J. contends for the first time on appeal that the district court lacked jurisdiction or authority to hear and/or rule on the intrafamily adoption because the district court judge in Division K had previously recused himself in the initial custody proceeding, which had been allotted to Division G where he then presided.
Louisiana Code of Civil Procedure article 154, however, provides that in order to seek recusation of a judge of the district court, the party must file a written motion prior to trial or hearing, unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered but prior to judgment. As previously noted, C.D.J. did not raise the issue of recusation in the district court nor did she seek recusal of the district court judge by filing a written motion prior to the district court's judgment in this matter. Therefore, the issue of recusation is untimely and not properly before this court.
Adoption
Generally, a parent's consent is required for an intrafamily adoption.
*306 La. Ch. C. art. 1193. However, pursuant to La. Ch. C. art. 1245, consent of a parent is not necessary if the petitioner proves that the parent has forfeited his right to consent, as follows:
A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.
B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
(1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
Although the initial burden of proving that a parent's consent to an adoption is not required lies with the party seeking the adoption, once a prima facie case is proven, the burden shifts to the nonconsenting parent to show that his or her failure was due to factors beyond his or her control. In re T.A.S., 04-1612, p. 6 (La. App. 1st Cir. 10/29/04), 897 So.2d 136, 140.
In the instant case, the parties do not dispute that the last time C.D.J. exercised physical custody of the minor children was in August 2014. Thereafter, the record demonstrates that C.D.J. did not attempt to communicate with her children until March 2015, over six months from her last communication or attempted communication with the children, when C.D.J. sent Facebook messages to D.G.C. stating that she did not want to hurt the kids and wanted to be a good mother. C.D.J. stated that she had applied for a job and was looking for a place to live. She also offered to buy school clothes or shoes for K.P.C. However, D.G.C. stated that K.P.C. had clothes and cautioned C.D.J. that she cannot "play mommy" when she feels like it. In April 2015, C.D.J. continued to send Facebook messages to D.G.C. C.D.J. stated that she had bought Easter baskets for the children and wanted to know where she could drop them off. She also stated that she wanted to buy them clothes, and asked D.G.C. what K.P.C. wanted for her birthday. D.G.C., however, told C.D.J. that he would talk to her when she finished rehab and parenting classes and until then, to leave them alone. Thereafter, in June 2015, Facebook messages between D.G.C. and C.D.J. indicate that C.D.J. had sent a birthday card to W.K.C. D.G.C. stated that he gave W.K.C. the card. Additionally, D.G.C. told C.D.J. to leave them alone and they were all better off without her "garbage." C.D.J. did not thereafter attempt to contact the children until December 2015, approximately six months later, when she called D.G.C., asked how the children were, and was told that they were already asleep.
D.G.C. stated that he received a text message from C.D.J. in February 2016, *307 religious in nature and stating that she really wanted to get the children. There is no evidence of any further attempted communication between C.D.J. and her children until late August 2016. In August 2016 through December 2016, C.D.J. sent several Facebook messages to W.K.C. stating that she was thinking about him and his sisters, that she loved him and missed him, that she wanted to restore their relationship, and asked to talk to him on phone. W.K.C. did not respond to C.D.J.'s attempted communications.
Accordingly, based on the evidence in the record, C.L.A.C. and D.G.C. demonstrated that C.D.J. did not communicate or attempt to communicate with her children from August 2014 to March 2015, which is a period in excess of six months, and thereafter failed to communicate or attempt to communicate with her children between June 2015 and December 2015 and February 2016 and August 2016. Therefore, there was at least one time period, and potentially three time periods, where C.D.J. failed to visit, communicate, or attempt to communicate with her children for at least six months. See In re C.E.M., III, 09-787, p. 9 (La. App. 5th Cir. 1/26/10), 31 So.3d 1138, 1143 ; see also In re MDA, 427 So.2d 1334, 1336 (La. App. 2nd Cir. 1983) (finding under the prior law that the one-year period of non-support need not immediately precede the filing of the petition for adoption).
C.D.J. contends, however, that the provisions of La. Ch. C. art 1245 do not apply to the instant matter because custody litigation was ongoing. In support of her argument, C. D.J. cites to C.D.J. v. B.C.A., 11-378, p. 3 (La. App. 3rd Cir. 10/5/11), 74 So.3d 300, 302, wherein the court stated that "it was not the intent of the law for the provisions of [ La. Ch. C. art. 1245 ] to apply to the case where there is on-going litigation relating to custody." However, we note in C.D.J., the court had ordered the father to pay child support but there was no order as to custody. After the father failed to pay child support as ordered for a period of at least six months, the stepfather filed a petition for intrafamily adoption, to which the father objected, asserting that the stepfather had no cause of action and the petition was premature because no custody order was in effect. The district court sustained the exception raising the objection of no cause of action and signed a stipulated judgment as to custody, and the third circuit affirmed the district court's judgment. C.D.J., 11-378 at pp. 3-4, 74 So.3d at 302.
This court distinguished C.D.J. in In re R.P.D., 14-1539, p. 2, 2015 WL 1880489 (La. App. 1st Cir. 4/22/15), (unpublished opinion), because in that case, there was an interim order of custody and no pleading had been filed in the custody suit nor had the parent exercised any custody or visitation with the child in over four years. Accordingly, this court found that the parties were not involved in "on-going" custody litigation that would prevent the stepparent from filing for intrafamily adoption. In re R.P.D., 14-1539 at p. 2.
Furthermore, we note that in In re A.M.B., 06-1114, p. 5, 2006 WL 3813728 (La. App. 1st Cir. 12/28/06) (unpublished opinion), a father who was awarded joint custody in 2002 and had not seen his children since the same year, filed a rule to implement visitation with his children one month prior to the stepfather's filing of a petition for intrafamily adoption in 2005. This court applied La. Ch. C. art. 1245 and affirmed the district court's judgment granting the petition for adoption.[1]
*308 In the instant case, the record demonstrates that the district court signed a custody judgment awarding the parties joint custody in April 2014. The last time C.D.J. exercised physical custody of the children was August 2014. C.D.J. did not file a motion to enforce custody until March 16, 2017, almost three years after the initial custody judgment and over two and a half years since she had last exercised custody pursuant to that judgment. Accordingly, while there may be instances where "on-going" custody litigation may prevent the application of La. Ch. C. art. 1245, based on the facts of this case and the jurisprudence detailed above, we find no error in the district court's finding that La. Ch. C. art. 1245 applies to the instant matter.
Therefore, because C.L.A.C. and D.G.C. made a prima facie case that C.D.J.'s consent to the adoption is not required in accordance with La. Ch. C. art. 1245(C)(2), the burden shifted to C.D.J. to show that her failure was beyond her control. In re T.A.S., 04-1612 at p. 6, 897 So.2d at 140. In opposing the petition for adoption, C.D.J. asserted that she attempted to communicate with her children, but that D.G.C. refused to facilitate a relationship between C.D.J. and her children and indicated that he would not cooperate with any effort by C.D.J. to see and/or communicate with her children.
Louisiana courts have found that when a stepparent and the parent with custody have hindered the attempts of the natural parent from visiting or communicating with their child, the natural parent may be excused from otherwise failing to do so. See In re Puckett, 49,046, pp. 14-15 (La. App. 2nd Cir. 4/17/14), 137 So.3d 1264, 1273. However, C.D.J. does not dispute that she failed to visit, communicate, or attempt to communicate with her children from August 2014 to March 2015, a period in excess of six months, and she offered no evidence that the reason she failed to visit and/or communicate with her children during that time period was due to the lack of cooperation from D.G.C.[2]
Therefore, based on our thorough review of the record, we find no error in the district court's judgment that C.L.A.C. and D.G.C. met their burden of proving that C.D.J.'s consent to the adoption was not necessary based on her failure to visit, communicate, or attempt to communicate with the children without just cause for a period of at least six months.
However, even where the other parent's consent is obviated by failure to visit or communicate with his child, there still must be a showing that terminating the natural parent's parental rights and granting the intrafamily adoption is in the best interest of the child. See In re C.E.F., 07-0992, p. 6 (La. App. 1st Cir. 9/14/07), 977 So.2d 1, 5-6. In intrafamily adoption cases, this court has held that several factors must be considered when determining the best interest of the child. See In re C.E.F., 07-0992 at p. 7, 977 So.2d at 6 ; In re Miller, 95-1051, 95-1052, p. 6 (La. App. 1st Cir. 12/15/95), 665 So.2d 774, 777, writ denied, 667 So.2d 541 (La. 1996). The most *309 important factors are the child's relationship with the stepparent and the natural parent not married to the stepparent. It is not enough to examine the love and home environment provided by the petitioner/stepparent. The court must also examine the depth of closeness of the child's ties with the noncustodial natural parent, and the effect which the loss of this relationship would have on the child. Further, the court must consider the seriousness and finality of the severing of the relationship between the parent and child, as well as the importance and benefit to the child of a continued relationship with the parent. In re C.E.F., 07-0992 at p. 7, 977 So.2d at 6.
In the instant case, the trial court in its oral ruling found "based upon the testimony and evidence presented and in reviewing Civil Code Article 134 regarding the [factors] for the best interest of the minor children that it is in the best interest of the minor children that [C.D.J.'s] parental rights be terminated; I further find based upon factors contain[ed] in Civil Code Article 134 together with the testimony and evidence submitted that it is in the best interest of the minor children that the Petition for Intra Family Adoption be approved...." Louisiana Civil Code article 134, however, details the factors a court should consider in determining the best interest of a child as related to custody in divorce proceedings. Accordingly, by considering the factors detailed in La. C.C. art. 134 rather than the special factors detailed above specifically related to termination of parental rights and adoption by a stepparent, the district court legally erred. When a legal error occurs and a trial court applies incorrect principles of law, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. In re C.E.M., III, 09-787 at p. 7, 31 So.3d at 1142. Because the record is otherwise complete, we will therefore review de novo whether the adoption by C.L.A.C. is in the children's best interest.
At trial, D.G.C. stated that C.D.J. had not seen the children since August 2014. According to D.G.C., when C.D.J. picked up the children in August 2014, she was gone only about three hours when she got into an argument with W.K.C. and brought him back home. C.D.J. then left with the youngest child, and D.G.C. did not hear from C.D.J. for three days. D.G.C. subsequently received a call from C.D.J.'s niece at 3:00 a.m., stating that C.D.J. and the baby were walking down the state highway and he needed to go pick them up. D.G.C. thereafter picked up the baby. D.G.C. stated that prior to this incident, C.D.J. was involved in a lot of drug activity when she exercised physical custody of the children, and that had not changed over the last few years. D.G.C. stated that C.D.J. had also been in legal trouble.
C.D.J. also testified at trial. C.D.J. acknowledged that after her separation from D.G.C., there was a period where she was doing things that she was not supposed to do. C.D.J. also acknowledged that she had not seen the children since August 2014 and only recently attempted to reenter the children's lives. C.D.J. stated that she did not recall the August 2014 incident where D.G.C. had to come pick up the youngest child from the side of the road. However, C.D.J. acknowledged that she had been in legal trouble since 2014, for which she was currently on probation. C.D.J. also admitted to seeking rehab. According to C.D.J., however, she recently submitted to a drug test, the results of which were negative.
C.L.A.C. stated that when she first met D.G.C., the children were scattered and not well behaved. However, C.L.A.C. stated *310 that her presence in the children's lives has led to their improvement. C.L.A.C. stated that the children are now happy and healthy and one hundred percent better than the day she met them. C.L.A.C. stated that she has taken on the role of mother one hundred percent, including attending school functions for the kids. Particularly, with regard to A.J.C., C.L.A.C. stated that she has been in A.J.C.'s life since she was two, and A.J.C. does not even remember her biological mother. In fact, C.L.A.C. stated that A.J.C. thinks that C.L.A.C. is her biological mother because she is the only mother she has ever known. Additionally, C.L.A.C. stated that K.P.C. also now calls her mom, because she has been in the children's lives for three years and they do not think of her as a stepmom.
The district court also conducted an interview of W.K.C. W.K.C., who was sixteen at the time of trial, stated that he was "all right" with C.L.A.C. adopting him and that it is something he would like. Further, W.K.C. stated that he did not recall C.D.J. reaching out to him on Facebook, as he does not check Facebook often, but even if she had tried to reach out to him, it would not make a difference.
Finally, the attorney representing the minor children submitted a statement after conducting an interview with D.G.C., C.L.A.C., W.K.C., K.P.C., and A.J.C. According to the statement, W.K.C. had been expelled from his old school and had been in trouble at his current school for fighting. The attorney stated that C.L.A.C. believes that W.K.C. has anger issues related to his biological mother, and D.G.C. agreed, noting that W.K.C. had been abandoned by C.D.J. at a Dollar General Store while she was buying controlled substances. According to the attorney, C. L.A.C. and W.K.C. get along. With regard to K.P.C. and A.J.C., the attorney noted that the girls were by C.L.A.C.'s side with seeming affection and feelings of inclusion. The attorney stated that C.L.A.C. told her that K.P.C. has memory of being in a crack house with her mother, and K.P.C. fears Wednesdays because her mother might decide to pick her up from school. The attorney further stated that D. G.C. and C.L.A.C. stated that K.P.C. and A.J.C. are aware of the proceedings and are enthusiastic and impatient about C.L.A.C.'s proposed adoption.
Based on the foregoing, we find that the record demonstrates the minor children have not had a relationship with C.D.J. due to C.D.J.'s absence from their lives since 2014. In fact, the youngest child does not even remember C.D.J. and recognizes C.L.A.C. as the only mother she has ever had. Furthermore, the minor children have improved since C.L.A.C.'s presence in their lives and are eager to finalize their relationship with her. Therefore, based on the foregoing and our thorough review of the record, we find that it is in the best interest of the children that the court approve the intrafamily adoption by C.L.A.C.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to C.D.J.
AFFIRMED.
Pettigrew, J. concurs

Likewise, other courts have found that a parent's filing of a rule for visitation did not interrupt the six month time period set forth in La. Ch. C. art. 1245. See In re C.E.M., III, 09-787 at pp. 9-10, 31 So.3d at 1143 ; see also In re B.L.M., 13-0448, p. 9 (La. App. 1st Cir. 11/1/13), 136 So.3d 5, 6.

We also note that while D.G.C. and C.L.A.C. moved with the children to Loranger in November 2015, and enrolled the children in new schools without notifying C.D.J., this too occurred after C.D.J. had already failed to visit and/or communicate with the children for a period in excess of six months. Therefore, this evidence fails to demonstrate how the act of moving and failing to notify her of the children's residence and/or new school prohibited her from exercising physical custody of the children prior to that time.